The next case on the calendar for today is United States v. FNU-LNU, No. 18-3766. Good morning, Your Honors. May it please the Court, my name is Stephen Brill from Sullivan & Brill. I represent the appellant in this matter. What is your client's name? Well, Your Honor, that's the $64,000 question. The answer is that we'd be straightforward. Yes, the answer is, I don't know. And nevertheless, he is an individual who has been through the system, convicted of an underlying crime, sentenced to that crime, and then – I understand that it's not Reginald Davis? Well, he pled guilty to the violation of supervised release, admitting that his name was not Reginald Davis, that he was misusing Reginald Davis. As far as we know, his identity is he's not Reginald Davis. That's exactly right. Of the 7 billion people on earth, and all the names involved, we know that he's not. One name. We're getting there, yes. Take a while. Nevertheless, Your Honor, I would hope that this Court, and I hope that the sentencing court, would still impose a sentence on this individual, the appellant, that meets, obviously, legal appropriateness. Why is it perfectly unreasonable for the district court to have the considerations and concerns that it expressed, and to impose the lifetime of supervised release and the maximum that was available for the district for years now? I sat on the first appeal that your client brought in 2012, and he's refused to identify himself, so the court cannot properly assess his criminal history. In fact, he's misled the court on numerous occasions. Why is that not a valid concern for the district court to take into consideration, you know, under the 3553 factors and the need for deterrence, and to sentence him just as he did? How can you possibly claim this is substantively unreasonable? Well, Your Honor, I don't dispute the fact that this is a cause for concern, and certainly Judge Sullivan spoke about his displeasure similar to Your Honor's comments. Nevertheless, there are still legal boundaries with respect to sentencing individuals who violate supervised release, even with this case, and even with your displeasure about him. What legal boundary can you say he exceeded? We're talking about the sentencing court, Judge Sullivan? Well, Your Honor, I mean, the standard here, as Your Honors know, for substantive unreasonableness is shocking the conscious or manifestly unjust, and I think any time a sentencing judge imposes a lifetime of supervised release, lifetime, then that's breathtaking, and I don't say that lightly, and I'm not trying to be dramatic. And so I think we have to start there, and that's inclusive of Your Honor's displeasure and concern about my client and also Judge Sullivan's. If he's concealing his identity and he has a history record of being a serial killer, which we can't find out because we don't know his name, why isn't it appropriate for the judge to take every possible precaution to protect society that's within the boundaries of the statute until we find out who he is? You know, we don't know what his immigration status might be. We don't know about past criminal history, which could be the worst possible ever, and there's no way to verify it. What this has exposed, and this is the first case I've been on a court a long time and a prior court, too, this is the first time I've seen a real vulnerability in the system that operates in our criminal justice system, which depends upon knowing who the defendant is. And he's found this little problem, and he's exploiting it. Well, Your Honor, I mean, if we carry Your Honor's, what I think Your Honor is implying to its end degree, then what we're left with is essentially, I mean, what I would consider an unsustainable situation, and that is that as long as this individual does not reveal his real identity or to reveal it to the court's appreciation or that the court can agree with it and is comfortable with it, then we will have this never-ending cycle of an individual who is, who a maximum sentence is imposed upon, in this case being. It's not a never-ending cycle. Everybody I've ever met in my life, if I asked them, told me what their name was. Well, you know, with all due respect, as far as Your Honor knows. But, yes, I understand the point. I understand the point. And look, I mean, back to your, Judge Walker's question, you know, he, nevertheless, he was tried by our system and was sentenced essentially in a normal fashion. I understand the irregularity of the case and the uniqueness of this case. But he was treated essentially normally in terms of his supervised release. So all of a sudden. Congress has federalized a lot of crimes, but they haven't gotten around to federalizing the lack of identity as a crime yet. But it's something that is, it seems to me, perfectly appropriate to take into account its sentencing. I mean, the purpose of the, one of the principal purpose of the whole criminal justice system is to protect the public. And we don't know anything about this guy because he won't assist us in that regard. So we know something about him, Your Honor. And again, I am not making light of what the concern is of this court and the sentencing court. But we do know what he has Do we know his nationality? He told the court, came back, right, and made representations that, yes, you know, I'm from the Caribbean. I think it was Jamaica maybe. And then it took the resources of the court again to go out and determine that, in fact, that wasn't really true. Once again, not only was he not Reginald Davis, he wasn't even from where he said he was from. He's been overheard speaking in Nigerian dialect. Why should the court system bear the costs and the concern that arise from that kind of behavior? As Judge Walker says, he could have a violent history that would warrant locking him up for the rest of his life, never mind putting him on supervised release for the rest of his life. Why is that a client? Well, the court system should definitely deal with the appellant in an appropriate and legal fashion. I'm not asking that the court ignores the problem that Your Honor sees. But I believe that in terms of what is a valid and legal sentence under the law and that it's reasonable, that there still needs to be some level of scrutiny applied to the sentence, despite what Your Honor is saying. And even conceding what Your Honor is saying. How can we possibly tell whether the sentence is appropriate if we don't know who he is? Well, as I was going to mention to Judge Walker, we know we know something. The Chief Judge — I'm sorry, Judge Cornyn brings out the — We know he's 5'10", we know he's committed crimes in the past. No. I'm sorry, Your Honor. We know more. We know that when he was released, that he — he — again, I understand this is a double-edged sword, and I understand the idea that when he was released, he continued to use that name. So I'm not mindful. But he did the right thing at that point. He got — he went to school full-time. He worked any time he wasn't in school. He did not violate any — well, he did not violate any supervised release, other than obviously maintaining this name. But he reported — Where is he from? That also is not known by me or by the record. You have a Sixth Amendment obligation to advise him with respect to his — the immigration consequences of any plea he enters. So how can you do that? It puts you in a bind. It's not only just the court and the public, but how can you do that if you don't know where he's from? I zealously play the hand that I'm given, Your Honor. I see my red light is on. You may be seated. Thank you. May it please the Court, Cecilia Vogel for the government. I represent the government on appeal and represented the government in the violation of supervised release proceedings in front of Judge Sullivan. Lifetime supervised release and three years imprisonment is a procedurally and substantively reasonable sentence for this defendant. Judge Sullivan did not abuse his discretion in imposing the sentence. The defendant was convicted by a jury of a narcotics conspiracy, aggravated identity theft, and false statements for using the identity of Reginald Davis. For over a decade — Are you talking about the violation of supervised release now, or are you talking about the original crime? I'm talking about the original crime. So starting there, because that's when he was first convicted of using the Reginald Davis identity. For almost over a decade after that point, despite his conviction at trial, despite getting 120-month — excuse me, 110-month sentence and four-year supervisor's lease and receiving numerous warnings from Judge Sullivan specifically that he should not continue to use the Reginald Davis identity, over all that time, the defendant continued to use the Reginald Davis identity. So since you've been involved for such a long time, can you tell me, does the record contain any reflection of a mental disease or illness of any kind that would require attention? Your Honor, I don't believe — there's nothing in the record to show that the defendant was ever — that that came up as an issue ever in the proceedings. So the defense never — Never raised that as an issue. Certainly mental health treatment and cognitive behavioral therapy were previously imposed as part of the terms of supervised release, and Judge Sullivan re-imposed them now in this new term of supervised release. Does he probably know who he is and where he's from? No, where he — who he is and where he's from? No. We have some leads and ideas. We believe he's from Nigeria. We believe we may have identified a relative. The most current status is that I have been in touch with the Department of Immigration and Immigration Affairs, and we're working our way, covering Nigeria, to see if we can get Nigerian authorities to help us identify who he is. Because at this point, we seem to have exhausted all possible leads here in the United States. Essentially, he's never previously come in contact with law enforcement or any — He's not on any database, fingerprints or anything. Correct. His fingerprint only comes back to the Reginald Davis identity in connection with this case. So if he did enter the country as an immigrant, illegally, did not come through an official port of entry, there would have been no fingerprints taken. Essentially, his — his fingerprint never matched to — to any other identity. And we do know that he's used other identities. This has come up — is in the pre-sentence report for the original sentencing. At the time of his arrest, he was found to have also used the name Tony McKinnon. I don't know, based on the record, if that is a real identity, but that is in the record. He also used another identity as reflected in his criminal history. This is also in the pre-sentence report. He applied for a license to become security guard using that identity, which was a real identity. And then, of course, now, after he did admit that he was not Reginald Davis during the course of these violation proceedings, Judge Sullivan adjourned the violation sentencing specifically to give the defendant an opportunity to identify himself if he chose to do so in an effort to show that he's rehabilitated himself. And given that opportunity, the defendant provided what the government has determined is another false name. And we explained to Judge Sullivan in a letter why we believe it's a false name. And at his sentencing, the defendant continued to insist that that is his real identity. But this is one other than Reginald Davis, right? Correct. And we don't believe that this identity that he provided most recently is a real identity. In other words, it's not a stolen identity. It seems to cobble together personal identifying information from various sources. Is there any reason to believe from the fingerprint study that you all have done or any other inquiry that he has been convicted of or charged with a violent crime in the past decade? Not here. Well, recognizing that he has spent almost the past decade in jail, but proceeding that, as I said, his fingerprints don't come back to anyone other than Reginald Davis. And we don't know when he entered the country. We don't. He has provided various statements to law enforcement about his background, which are also — But you found his credibility a little suspect. Yes. And they're not always consistent as well. So we don't know when he entered the United States. So we really don't know anything about his past before he came into contact with law enforcement for this particular case. So this defendant has really shown an incredible persistence in this criminal conduct and in refusing to identify himself. And for this reason — But it wasn't just the refusal after he was released from prison and came back on supervised release. He violated supervised release by engaging in narcotics activity. So ultimately, the government did not pursue the — his arrest in connection with the narcotics, or there were, like, a skimming device and other stolen identities. That was considered to be his violation. Initially. Initially. But you didn't pursue that as a violation? Ultimately, no. It was included as violation specifications in the violation report. What you pursued, which specifications you ultimately pressed? So we ultimately pressed the last specifications, which was an amendment to the violation report, which was the use of the — the continued use of the stolen Reginald Davis identity, as well as leaving the district without authorization from probation because he was arrested in New Jersey in connection with the So we chose to pursue — ultimately pursue those specifications. And they do merit the sentence that Judge Sullivan imposed. There's — he's — this defendant has shown that he is very likely to reoffend. And it's significant because there's — there has been a real victim, and if he uses another stolen identity, there will be another real victim. So this is a serious offense. Am I right in understanding that the actual Reginald Davis appeared at his initial trial or in some proceeding? That's correct. At the trial, the real Mr. Reginald Davis flew up from Texas and testified at the proceeding. He's never given an indication as to why he used the name Reginald Davis? I mean, you know, it occurs to me that there could be a number of things. Maybe they want him in Nigeria for something. Maybe his involvement with other people would — if he revealed his name would cause his life to be in danger. I just — you know, there weren't — we don't know any of this. Correct. We just don't know. So unless the Court has further questions — Thank you. — the government would like to rest on its brief. And I would just like to say that the defendant's sentence should be affirmed for all the reasons that I've discussed. Thank you very much. Mr. Brill, you have one minute. Yes, Your Honor. Thank you. Just very quick things. Just to clear the record, there was no criminal activity that was proven with respect to the violation of supervised release. It's not — She said that that wasn't pressed. Well, she said — I mean, and again, just to be clear, it's not that the government didn't pursue it. It's that New Jersey didn't have any evidence to accuse him. So there was no accusation of any crime, and that was ultimately dismissed. So I don't want there to be — Was he arrested? Was he arrested, though, in a house in New Jersey where there was drug dealing going on? No. Well, he was arrested in New Jersey, yes. And I don't recall — — a deeming device that — Yes. — contained bags of heroin — Yes. — with $50,000 in cash. How did that arise? That wasn't a product of someone's imagination, was it? Yes, look, I could — well, first of all, I did not represent him in the New Jersey matter, but I did have contact with the New Jersey lawyer. And all I can tell the Court is that — I mean, given what you're saying, New Jersey nevertheless did not charge him with any of that and ultimately dismissed the case. So I would hope you don't speculate as to what his knowledge was or what he was doing there or whether or not he was even aware of it, because the record does not reflect that. He wasn't supposed to be in New Jersey in the first place, right? I'm sorry, Your Honor? He wasn't supposed to be in New Jersey. That's correct. And he admits to that violation. Also, there was never a charge that he was misusing an identity. I understand, ultimately, he pled guilty to that using Reginald Davis, but this was essentially a sentencing court's impetus in terms of that the government should add that as a specification. As far as probation was concerned initially, he was charged with really the underlying accusations in New Jersey and leaving the district without permission. But with some influence, Judge Sullivan added — or asked probation to add the additional identity charges. He wasn't charged with identity theft. I understand Judge Walker saying that perhaps federal law should impose it, but state court — state law didn't even impose it. He was never charged with the misdemeanor or whatever it is regarding identity theft. Okay, Mr. Brill, I'm just — we have to keep close to our friends today because we have a very busy schedule. Thank you for your consideration, and I would hope that you find the sentence substantially unreasonable and remand it. Okay, thank you very much. We'll take it back.